UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| MATT SCHWEDER, *o/b/o P.S.*, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:21-cv-00019-GFVT |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| ANDREW GRAHAM BESHEAR, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Our patience is wearing thin.  Quite frankly, we all hoped things would be back to normal by now.  But nature, by way of a virus, continues to stand in the way of that hope.

Understandably, those that filed this lawsuit are frustrated by the Governor's actions aimed at protecting us from Covid-19.  But the Constitution does not protect us from every bad policy.  Nor are federal courts always available to adjudicate every state action.  That is why, as explained below, all of these claims will be DISMISSED.

**I**

In the spring of last year, Kentucky Governor Andy Beshear declared a state of emergency in response to the COVID-19 pandemic, citing KRS Chapter 39A as his authority to do so.  *See* Exec. Order 2020-215 (Ky. Mar. 6, 2020).  Since then, over the past year and a half, Governor Beshear has both executed and rescinded numerous executive orders pursuant to the state of emergency declaration.  *See, e.g.*, Ky. Exec. Order No. 2020-750 (Sept. 4, 2020) (rescinded).  On November 12, 2020, the Supreme Court of Kentucky held that Governor Beshear's declaration of a state of emergency in response to the Covid-19 pandemic was lawful and passed muster under the Kentucky Constitution.  *Beshear v. Acree*, 615 S.W.3d 780 (Ky.

2020).  However, the *Acree* opinion clarified that the Kentucky General Assembly had the authority to limit the Governor's statutorily derived emergency powers if it chose to do so.  *Id.* at 812–13.

And the Kentucky General Assembly did exactly that earlier this year when it enacted legislation that amended the Governor's emergency powers by limiting the unilateral actions he could take in response to the pandemic.[1]  Certain of these laws became effective on February 2, 2021.  Subsequently, Governor Beshear and Secretary of the Cabinet of Health, Eric Friedlander, filed a lawsuit in the Franklin Circuit Court, seeking a declaratory judgment that the Kentucky laws unconstitutionally infringed on his executive powers.  *See Beshear v. Osborne*, No. 21-CI-00089, 2021 WL 1588743 (Franklin Circ. Ct., Mar. 3, 2021).  The Franklin Circuit Court granted injunctive relief and temporarily halted enforcement of the new laws.  *Id.*  Soon after the Circuit Court granted injunctive relief, the Kentucky General Assembly ratified and extended many of Governor Beshear's executive orders for periods of thirty to sixty days and terminated others.  *See* Res. of Mar. 30, 2021, ch. 168, 2021 Ky. Acts 1059.  After an executive veto and legislative override, Governor Beshear moved the Circuit Court to include additional legislation, specifically HJR 77, in the temporary injunction, and the Circuit Court granted the request.  *See Beshear v. Osborne*, No. 21-CI-00089, 2021 WL 1588746, at *3–4 (Franklin Circ. Ct., Apr. 7, 2021).  Defendant Kentucky Attorney General Daniel Cameron sought an immediate review of the order in the Kentucky Court of Appeals.  *See Cameron v. Beshear*, --- S.W.3d ----, 2021 WL 3730708 (Ky. 2021).  The Court of Appeals recommended transfer to the Supreme Court of Kentucky.  *See id.*

---

[1] Act of Feb. 2, 2021, ch. 3, 2021 Ky. Acts 14; Act of Feb. 2, 2021, ch. 6, 2021 Ky. Acts 17; Act of Feb. 2, 2021, ch. 7, 2021 Ky. Acts 26; Res. of Mar. 30, 2021, ch. 168, 2021 Ky. Acts 1059.

On Saturday, August 21, 2021, the Supreme Court of Kentucky published its Opinion regarding the constitutionality of the Kentucky Assembly's new laws. *Id.* at *11–12. In a unanimous decision, the court held that the laws limiting the emergency powers of the Governor were proper, found the Franklin Circuit Court's injunctive relief improper, and remanded the case to the Circuit Court with instructions to dissolve the injunction. *Id.* The Supreme Court of Kentucky's *Acree* and *Beshear* opinions have large implications for the validity of Governor Beshear's emergency mandate and executive orders, as will be discussed in greater detail below.

In the present case, various Plaintiffs, who are all Kentucky citizens, seek declaratory judgments that: (1) there is currently no factual predicate for an emergency declaration; (2) Governor Andrew Beshear's emergency orders, both past and present, violate Separation of Powers under the Kentucky Constitution; and (3) the emergency declaration and executive orders concerning the COVID-19 pandemic violate citizens' constitutional rights to free exercise of religion, equal protection, peaceable assembly, personal autonomy, bodily integrity, lawful occupation, freedom of movement, public education, and substantive due process. [R. 1 at 96–97.] Further, Plaintiffs seek to enjoin, among other things, the use of PCR tests for COVID-19. [*Id.*] Lastly, there is a request for an award of compensatory and punitive damages under 42 U.S.C. § 1983. [*Id.*]

Defendants subsequently filed a Motion to Dismiss. [R. 8.] On July 6, 2021, while the Supreme Court of Kentucky's Opinion remained pending, Plaintiffs filed a Preliminary Injunction Motion, citing changed circumstances, asserting the absence of a public health crisis, and asking the Court to test the sufficiency of the emergency declaration.[2] [R. 14.]

---

[2] Plaintiffs filed a "Motion for Temporary Restraining Order and Motion for Partial Summary Judgment," which the Court construed as a motion for a preliminary injunction and scheduled a motion hearing. [R. 14; R. 15.]

## II

### A

An initial matter is the question of standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "At least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester, N.Y.*, 137 S. Ct. at 1651.

Standing is a threshold inquiry in every federal case that may not be waived by the parties. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Planned Parenthood Ass'n of Cincinnati, Inc. v. Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987). "To satisfy the 'case' or 'controversy requirement' of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). Plaintiffs' injury-in-fact must be both particularized and concrete. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Further, a "concrete" injury is a de facto injury that actually exists. *Id.* Finally, "a plaintiff must also establish, as a prudential matter, that he or she is the proper proponent of the rights on which the action is based." *Haskell v. Washington Twp.*, 864 F.2d 1266, 1275 (6th Cir. 1988) (citations omitted).

4

Defendants argue in their Motion to Dismiss that Plaintiffs lack standing because the Plaintiffs have (1) failed to plead facts showing that they plan to engage in conduct that is prohibited by the emergency public health measures; and (2) to the extent injuries exist within the Plaintiffs' Complaint, Plaintiffs failed to connect those injuries to these Defendants. [R. 8-1 at 12.] In response, Plaintiffs state that "[i]t is preposterous" for Defendants to claim that Plaintiffs lack standing. [R. 12 at 5.] Plaintiffs argue that "[e]ach Plaintiff was injured in numerous ways, including through Constitutional violations," and Plaintiffs highlight numerous ways in which the Plaintiffs have been injured as detailed in the body of the Complaint. *Id.*

Here, Plaintiffs allege in the Complaint, for each claim brought, specific ways in which the Covid-19 Executive Orders have infringed upon the constitutional rights of individual Plaintiffs' and argue that a declaration by this Court in addition to compensatory and punitive damages would provide relief for the alleged injuries. [R. 1 at 9–34, 96–98.] For example, numerous Plaintiffs allege the inability to practice their religion or assemble with others because of the Emergency Declaration and subsequent Covid-19 Executive Orders in violation of their constitutional rights. *Id.* Accordingly, Plaintiffs have met the threshold inquiry of standing.[3]

**B**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The

---

[3] Plaintiffs have satisfied the threshold standing inquiry except for Matt Schweder and P and Kenneth Kearns, discussed *infra* at II.B.4.a and II.B.5.b.

Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pleaded must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability ... stop[ ] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. 544 at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556). Plaintiffs include six counts in the Complaint, each of which will be addressed in turn.

**1**

In Count I of the Complaint, Plaintiffs seek a declaratory judgment "terminating both the Emergency Mandates and the underlying Emergency upon which they depend" because "the exigencies underlying the emergency no longer exist, if they ever did." [R. 1 at 85.] Plaintiffs rely on *Chastleton Corporation v. Sinclair*, 264 U.S. 543, 547 (1934) and *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 442 (1934) to support the proposition that this Court has the power to order the cessation of the state of emergency in Kentucky. [*Id.*]

The Eleventh Amendment to the United States Constitution bars suits against the state. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 97–98 (1984). Although Governor Beshear is the named Plaintiff in this action, he was carrying out his official responsibilities in promulgating the state of emergency and subsequent executive orders, and therefore "the state is

the real, substantial party in interest." *Id.* at 121 ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment"); *see also in re Ohio Execution Protocol Litigation*, 709 F. App'x 779 783 (6th Cir. 2017)).  Therefore, the Eleventh Amendment serves as a bar to this claim unless the state has "unequivocally expressed" that sovereign immunity has been waived. *Id.* at 99 (citing *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).

Plaintiffs briefly argue, based on the Religious Freedom Restoration Act (RFRA) and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), that it "certainly appears" that sovereign immunity has been waived by statute for the religious freedom violations discussed in the complaint.  [R. 12 at 7.]  However, sovereign immunity was not at issue in *Cuomo*, and RFRA as applied to the states has been struck down.  *See Holt v. Hobbs*, 574 U.S. 352, 357 (2015) ("in *City of Boerne v. Flores*, 521 U.S. 507 (1997), this Court held that RFRA exceeded Congress' powers under that provision").  Furthermore, as previously expressed in *Danville Christian Academy v. Beshear*, a claim based on Kentucky's RFRA statute is clearly barred by sovereign immunity.  503 F. Supp. 3d 516, 530 (2020).

Here, Count I challenges the emergency declaration and emergency mandates based on changed circumstances and state law, but fails to show how this issue is properly decided by a federal court. *Pennhurst*, U.S. at 105; *see also Acree*, 615 S.W.3d at 786–87 (finding that under Kentucky law, Governor Beshear validly invoked the emergency powers granted to him under Kentucky law in declaring a state of emergency because of Covid-19).  Governor Beshear cannot be sued in his official capacity in federal court to enforce state law.  The Sixth Circuit explains that "because the purposes of *Ex parte Young* do not apply to [lawsuits] designed to bring a State into compliance with state law, the States' constitutional immunity from suit prohibits all state-

law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature." *Ernst*, 427 F.3d at 368 (citing *Pennhurst*, 465 U.S. at 106). This conclusion applies even if supplemental jurisdiction otherwise exists. *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 438 (6th Cir. 2000); *see also Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002) ("§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants"); *Burgess v. Fischer*, 735 F.3d 462, 471 n.1 (6th Cir. 2013) ("[T]he Eleventh Amendment bars the adjudication of pendent state law claims against non-consenting state defendants in federal court"). Therefore, the Eleventh Amendment prohibits this Court from further considering Count I, and Count I will be dismissed.

**2**

Count II of the Complaint is also inarguably a matter of state law. [*See* R. 1 at 85.] In Count II, Plaintiffs seek a declaratory judgment "that the KRS provisions specifically relied upon by the State in promulgating its endless Emergency Mandates, are an unconstitutional delegation of legislative power." [*Id.*] Plaintiffs' questions regarding the constitutionality of KRS 39A.010 in light of the Kentucky Constitution are questions of state law and are more appropriately addressed by Kentucky state courts.[4]

Absent another constitutional basis to do so, the case law that Plaintiffs have cited does not allow a federal district court to impede on state-law matters for the reasons provided above for Count I. *See Pennhurst*, 465 U.S. at 105 ("[I]t is difficult to think of a greater intrusion on

---

[4] In fact, the Kentucky Supreme Court has already weighed in on this specific issue. In *Acree*, the Court specifically found that the Governor's declaration of a state of emergency was not unconstitutional, holding that "KRS 39A.100 authorizes the Governor to declare a state of emergency in the event of the occurrence of any of the situations or events contemplated by KRS 39A.010, which includes biological and etiological hazards such as the COVID-19 pandemic." 615 S.W.3d at 786. Furthermore, another recent Kentucky Supreme Court decision, discussed in more detail below, likely moots this claim, which provides this Court with an additional basis to dismiss Count II. *See Cameron v. Beshear*, --- S.W.3d ----, 2021 WL 3730708, at *11–12 (Ky. Aug. 21, 2021) (upholding legislation curbing Governor Beshear's authority to respond to emergencies, such as the Covid-19 pandemic).

state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law … [s]uch a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment").  Accordingly, Count II will be dismissed.

**3**

In Count III, Plaintiffs Larry Nichols, Joshua Nichols, Wesley Anglin, Frank Anglin, Maggie Anglin, Robin Harbolt, her child P, and Charles W. Burton seek a declaratory judgment "that the Defendants have violated their fundamental 1st Amendment right to free exercise of religion and related freedom of association," and violated both the Equal Protection Clause of the 14th Amendment and the Kentucky Constitution.  [R. 1 at 89–90.]  However, "constitutional amendments themselves do not constitute a waiver of sovereign immunity."  *Davis v. California*, 2017 WL 4758928, at *3 (D. Kan. Oct. 20, 2017) (citing *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005)).  Here, Plaintiffs have failed to identify a waiver of sovereign immunity for these specific claims.  Furthermore, to the extent these alleged violations happened in the past, a district court "does not have jurisdiction to grant retrospective relief" for alleged constitutional violations in this case.  *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 395 F. Supp. 2d 644, 652 (S.D. Ohio 2004).  Therefore, the Court will dismiss Count III on sovereign immunity grounds.

However, Plaintiffs also seek an injunction against "enforcement of the unconstitutional aspects of the challenged Emergency Mandates," which would include the First Amendment and Fourteenth Amendment claims above.[5]  [R. 1 at 97.]  Specifically, Plaintiffs allege that: (1)

---

[5] Plaintiffs also ask this court to "[e]njoin the use of PCR test results as the basis for determining public health responses and restrictions unless and until it is proven by the Defendants that this test is reliable and accurate at the cycle thresholds being used in Kentucky."  [R. 1 at 97.]  However, the use of PCR tests is a matter of health and safety, and issues pertaining to the health and safety of the people primarily rests with the "politically accountable officials of the States" and not an "unelected federal judiciary."  *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring).  Therefore, the court declines to enjoin the use of PCR tests.

Burton and both Nichols[6] were unable to congregate and worship with prisoners in light of the

Emergency Declaration and executive orders; and (2) similarly, that Wesley Anglin (a Kentucky

state prisoner) and his family members (including Robin Harbolt and her child P) were unable to

congregate with each other and other prisoners.  [R. 1 at 19–27.]  Under the *Ex parte Young*

exception to sovereign immunity, "[s]overeign immunity does not apply to official-capacity

claims seeking prospective injunctive relief to end a continuing violation of federal law."  *Rymer*

*v. Lemaster*, 2019 WL 2583007, at \*4 (6th Cir. Jan. 14, 2019); *see also Stringfield v. Graham*,

212 F. App'x 530, 535 (6th Cir. 2007) (collecting cases); *Chaz Const., LLC v. Codell*, 137 F.

App'x 735, 745 (6th Cir. 2005) ("sovereign immunity does not bar their claims insofar as their

claims are for prospective injunctive relief against state officials").  Because sovereign immunity

does not apply to Plaintiffs' request for injunctive relief brought under § 1983, the Court will

proceed to the merits.  *See Westside Mothers v. Haveman*, 289 F.3d 852, 862 (6th Cir. 2002).

As an initial matter, Plaintiffs' allegations are general and fail to articulate a particular

executive order implicated by this change in visitation policy.  In addition, as Defendants argue,

prison policy is set by the Department of Corrections and not Defendants in this lawsuit.  [R. 8-1

at 15.]  However, even assuming Governor Beshear's executive orders and state of emergency

allegedly affected the rights of prisoners, "[p]risons…differ in numerous respects from free

society."  *Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 129 (1977).  "In [the]

prison context, an inmate does not retain those First Amendment rights that are 'inconsistent

with his status as a prisoner or with the legitimate penological objectives of the corrections

system.'"  *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817 822 (1974)).

---

[6] The Nichols "engage in a Prison Ministry," and Mr. Burton is a recently released Kentucky inmate who previously
volunteered as an inmate chaplain.  [R. 1 at 19, 25–26.]

The Supreme Court has clearly stated that "freedom of association is among the rights least compatible with incarceration." *Id.* at 131. This principal also applies to the rights of individuals seeking to visit incarcerated individuals in prison. *See Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995) ("a citizen simply does not have a right to unfettered visitation of a prisoner that rises to a constitutional dimension"). Furthermore, the First Amendment does not guarantee an inmate choice as to their religious leaders within correctional facilities. *See Burridge v. McFaul*, 1999 WL 266246, at *2 (6th Cir. 1999) ("The First Amendment does not require prison officials to provide religious leaders of the inmate's choice"); *Payne v. Lucas*, 2012 WL 4847124, at *2 (D.S.C. July 19, 2012) ("[P]risoners are not entitled to have the clergymen of their choice provided for them in correctional facilities").

*Overton v. Bazzetta*, 539, U.S. 126 (2003), is instructive. The respondents in *Overton* were "prisoners, their friends, and their family members" who were arguing that a Michigan Department of Corrections visitation policy, enacted to control the widespread use of alcohol and drugs among prisoners, violated the respondents' First, Eighth, and Fourteenth Amendment rights by restricting visitation rights. *Id.* at 130. The Supreme Court disagreed, holding that "the challenged regulations bear a rational relation to legitimate penological interests," which "sustain[s] the regulation in question." *Id.* at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Here, Plaintiffs argue that certain constitutional rights, particularly the right of freedom of association, have been curtailed by Covid-19 restrictions. However, if the challenged regulations bear a rational relation to legitimate penological interests, there is no constitutional violation. *See Overton*, 539 at 132 (citing *Turner v. Safley*, 482 U.S. at 89). That modest standard is satisfied in this case by the legitimate interest of attempting to prevent the spread of Covid-19

within prisons.  *See, e.g.*, *Pape v. Cook*, 2021 WL 2186427, at *5–6 (D. Conn. May 28, 2021) (holding that in light of the Covid-19 pandemic, the plaintiff "has not alleged sufficient facts to raise an inference that the visitation restrictions imposed by [prison officials] during his confinement in the quarantine cell were unreasonably related to a legitimate goal of protecting the safety and health of visiting family members, staff and inmates, including him."); *Burrage v. Lee County*, 2021 WL 1343510, at *1 (N.D. Miss. Mar. 23, 2021) (finding that restricting access to visitors because of Covid-19 "without question…constitutes a legitimate penological objective" (citing *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020));  *cf. Santana v. Quiros*, 2021 WL 2138772, at *6 (in the Eighth Amendment context, finding in the Covid-19 context that a "temporary limitation on an inmate's visitation privileges due to a legitimate prison goal such as safety or security does not state a claim of a substantial deprivation of a basic human need").

"'Although the Supreme Court has considered issues concerning the visitation rights of prisoners in several cases,' no case from that Court or our court 'clearly establishes a constitutional right to visitation in prison grounded in the First ... or Fourteenth Amendments.'" *Desper v. Clarke*, 1 F.4th 236, 243–44 (4th Cir. 2021) (citing *Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013)); *see also Burridge*, 1999 WL 266246, at *2.  Accordingly, Count III will be dismissed.[7]

---

[7] Following the *City of Boerne* decision striking down RFRA as applied to the states, Congress enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000.  42 U.S.C. § 2000cc *et seq*.  RLUIPA governs religious exercise of individuals confined to an institution and provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015) (quoting § 2000cc).  Plaintiffs point to RFRA in their briefing as "hav[ing] bearing on standing, immunity, and damages" [R. 12 at 7], but as explained above, RFRA was struck down as applied to the states and replaced with RLUIPA.  To the extent Plaintiffs intended to invoke RLUIPA instead of RFRA, "the prevention of, and protection against, the spread of COVID-19 within the detention facility clearly constitutes a compelling government interest."  *Burrage v. Lee County*, 2021 WL 1343510, at *2 (N.D. Miss. Mar. 23, 2021); *see also Atwood v. Days*, 2021 WL 100860, at *8 (D.

4

In Count IV, Plaintiffs Matt Schweder, his child P, Larry Nichols, Joshua Nichols, Wesley Anglin, Maggie Anglin, Robin Harboldt, her child P, and Charles Burton allege that Defendants' actions violated their First Amendment rights to peaceably assembly, freedom of association, and deprived them of equal protection rights under the Fourteenth Amendment.  [R. 1 at 91.]

a

Plaintiffs Matt Schweder and P's allegation relates to COVID-restrictions enacted for a soccer match.  [*See* R. 1 at 27.]  Plaintiffs allege that: (1) during the 2020 soccer season, P's high school required players to wear masks at certain times; (2) during the first match of the season, Schweder was confronted by a school official and was told to wear a mask; (3) he otherwise qualified for a medical exemption from wearing a mask; and (4) only one school honored his exemption and allowed him to watch a match without a mask.  [*Id.* at 27–30.]  This Count is improperly before this Court.

Plaintiffs have failed to plead facts that connect their alleged injuries to Defendants' actions.  *See Iqbal*, 56 U.S. at 678.  Plaintiff Schweder complains about his inability to receive medical exceptions from certain physicians in order to attend the soccer games and that the local school district did not accept the medical exemption note that he *was* able to obtain.  [R. 1 at 27–30.]  Based on these allegations, Schweder and P's allegations lie with the physicians in question and the school district.  Plaintiffs have failed to connect their alleged injuries with any actions of the Defendants.  Accordingly, Plaintiffs Schweder and P's claims in Count IV must be dismissed.

---

Ariz. Jan. 12, 2021) (holding that plaintiff failed to demonstrate that burdening religious exercise by suspending in-person visitation to reduce the spread of Covid-19 is not a compelling government interest).

**b**

Plaintiffs Larry Nichols, Joshua Nichols, Wesley Anglin, Maggie Anglin, Robin Harboldt, her child P, and Charles Burton, are seeking "a Declaratory judgment that Defendants violated their First Amendment rights to peaceable assembly and related freedom of association, and deprived them of the equal protect of the laws under the Equal Protection Clause of the 14th Amendment." [R. 1 at 91.]  However, these claims are improperly before this Court for the reasons discussed *supra* in Section II.B.3.  Accordingly, Count IV will be dismissed in its entirety.

**5**

Plaintiffs substantive due process allegations in Count V likewise are subject to dismissal.  [R. 1 at 91–95.]  The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Plaintiffs, in Count V, allege failure by the Defendants to provide adequate substantive due process when the Governor enacted an emergency mandate and executive orders that infringed their rights to: (1) personal autonomy and bodily integrity; (2) work; (3) freedom of movement; and (4) education under the Substantive Due Process Clause of the Fourteenth Amendment.  [R. 1 at 91–95.]  As the Sixth Circuit explained in *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996), "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression."

The substantive component of the Due Process Clause protects fundamental rights created by the United States Constitution.  Fundamental rights are those specifically guaranteed by the United States Constitution and those rights that are "implicit in the concept of ordered liberty."  *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937). These

generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (internal citations omitted).  Substantive due process rights have been specifically defined by the United States Supreme Court, and do not include the right to maintain employment, public or otherwise.  *See Seal v. Morgan*, 229 F.3d 567, 574–75 (6th Cir. 2000).

**a**

The Court may quickly dispose of Plaintiffs' claim that they maintain a fundamental right to "work in a profession of their own choosing." [8]  [R. 1 at 93.]  The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  The Supreme Court has determined that this clause created "basic values implicit in the concept of ordered liberty."  *Griswold v. Connecticut*, 381 U.S. 479, 500 (1965) (Harlan, J., concurring).  Thus, "[t]he substantive component of the due process clause protects those rights that are '*fundamental*.'"  *Palko v. State of Connecticut*, 302 U.S. 319, 325 (1937) (emphasis added), *overruled on other grounds by Benton v. Maryland*, 395 U.S. 784, 793–94 (1969).  The Supreme Court has repeatedly determined that there is no fundamental right to a job, or right to work.  *See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 722 (2010) ("[T]he 'liberties' protected by substantive due process do not include economic liberties"); *Helm v. Liem*, 523 F. App'x 643, 645 (11th Cir. 2013) ("[T]he right to work in a specific profession is not a fundamental right.").  Accordingly, Plaintiffs' right to work claim is dismissed.

---

[8] Plaintiffs' claims represent a legal conclusion that need not be taken as true at the motion-to-dismiss stage.

**b**

Plaintiffs' claims to freedom of movement and the right to an education are likewise subject to dismissal in this case.  First, Plaintiffs do not sufficiently claim that any of Defendants' actions infringed their freedom of movement.  Plaintiffs claim that "Matt [Schweder] has been restricted from traveling to … his daughter's soccer matches" and Plaintiff Kenneth Kearns would have been able to travel freely, once healed, if he were able to have surgery.  [R. 1 at 95.] Neither Plaintiff, however, has pleaded any facts that show how their injuries were caused by the actions of the Defendants.  In short, Plaintiffs claims boil down to conclusory allegations that are subject to dismissal.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

To that end, Plaintiffs offer even less factual support for their claim to the right to an education.  [R. 1 at 95.]  In a single paragraph, Plaintiff simply cites *Plyler v. Doe*, 457 U.S. 202, 221–22 (1982) to stand for the notion that certain Plaintiffs have the right "to both give and receive an education."  These allegations are insufficient for purposes of *Twombly* and *Iqbal* and will be dismissed.  Even if Plaintiffs had properly pleaded this claim, however, there is no fundamental right to an education.  *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35–38 (1973).  Consequently, Plaintiffs' freedom of movement and the right to education claims will be dismissed.

**c**

Plaintiffs' allegations that their substantive due process rights to personal autonomy and bodily integrity will also be dismissed.  Plaintiffs claim that: (1) face masks are an ineffective and unproven method of preventing COVID-19; and (2) certain executive orders have prevented one Plaintiff from receiving surgeries at the time of his choosing.  [R. 1 at 91 –92.]  Regarding Plaintiffs' challenge to the Governor's mask mandates, the Supreme Court of Kentucky's

16

Opinion in *Cameron v. Beshear*, --- S.W.3d ----, 2021 WL 3730708 (Ky. Aug. 21, 2021), moots the issue.

The Sixth Circuit, in *Resurrection School v. Hertel*, explains the mootness inquiry in a case from Michigan involving masking requirements.  --- F.4th ----, 2021 WL 3721475, at *9–10 (6th Cir. 2021).  In *Hertel*, a Catholic elementary school challenged the Michigan Department of Health and Human Services' (MDHHS) masking requirement for all students in public and private schools.  *Id.* at *1.  While the case was pending, MDHHS rescinded the requirement.  *Id.* In a detailed Opinion, the Sixth Circuit explained that despite MDHHS rescinding the mask mandate, the issue was not moot, as both exceptions to the mootness doctrine applied.  *Id.*

However, as this Court recently held in *Pleasant View Baptist Church v. Beshear*, 2021 U.S. Dist. LEXIS 188202 (E.D. Ky. Sept. 30, 2021),[9] this case is distinguishable from *Hertel* because of recent Kentucky Supreme Court precedent.  Two days prior to the *Hertel* decision, the Kentucky Supreme Court upheld legislation that amended and curtailed the Governor's authority to respond to emergencies, such as the Covid-19 pandemic.  *Beshear*, 2021 WL 3730708, at *12.  The Kentucky Supreme Court ordered the trial court to dissolve an injunction that prevented laws from going into effect that restricted "the Governor's ability to take unilateral action during declared emergencies."  *Id.* at *1.

Following the court's decision, it is clear that Governor Beshear's ability to promulgate executive orders requiring masks, or unilaterally implement any executive order pertaining to Covid-19, can no longer occur.  Thus, there is no reasonable expectation "that the same complaining party would be subjected to the same action again," because Governor Beshear no

---

[9] *Pleasant View Baptist Church* involved constitutional claims made against the Governor following the promulgation of Executive Order 2020-969, which temporarily halted all in-person instruction for public and private schools within the Commonwealth.  2021 U.S. Dist. LEXIS 188202, at *4.  The Court found that Pleasant View's declaratory claims were moot based on *Beshear*, 2021 WL 3730708.  *Id.* at *12.

longer has the authority to autonomously promulgate Covid-19 executive orders. *Chirco v. Gateway Oaks*, L.L.C., 384 F.3d 307, 309 (6th Cir. 2004); *see also Roberts v. Beshear*, 2021 WL 3827128, at *4 (E.D. Ky. Aug. 26, 2021) ("Even if Governor Beshear wanted to invoke another mass gathering ban that effectively shut down in-person church worship, or issue another travel ban, the measures taken by the General Assembly prevent him from lawfully doing so. Given these subsequent legal developments, the Plaintiffs' claims are now moot.").

Accordingly, in light of the Kentucky Supreme Court's recent ruling in *Beshear*, the Court finds that Plaintiffs' claim, and all other claims made by the Plaintiff that rely on Governor Beshear's authority to promulgate Executive Orders, are moot.

**d**

Turning to Plaintiff Kenneth L. Kearns, II's assertion that the Defendants' executive orders blocked him from receiving cancer surgeries and therapy when he so desired, Plaintiff's claims are barred and are otherwise insufficiently pleaded. First, for the reasons provided above, to the extent Mr. Kearns relies on past executive orders, his claim is moot. Furthermore, Mr. Kearns has not sufficiently pleaded facts showing that his alleged injury was actually caused by Defendants' orders. On March 23, 2020, the Cabinet for Health and Family Services issued directives stating that all non-emergent and non-urgent procedures, or those that "were it not provided, is at high risk of resulting in serious and/or irreparable harm to a patient if not provided for more than 30 days," be suspended. Ky. Cabinet for Health and Family Services Directive (March 23, 2020), https://governor.ky .gov/attachments/20200323_Directive_Elective-Procedures.pdf. The Directive, however, deferred to the "best clinical judgment" of licensed healthcare professionals in implementing the directive. *Id.* Accordingly, accepting Plaintiffs' allegations as true, Mr. Kearns's physician and her judgment present a necessary intervening

cause of Kearns's injuries.  "Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim."  *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007).

Plaintiffs will not be able to plausibly show that Defendants were the legal cause of Mr. Kearns's injuries because the physician necessarily exercised her judgment not to treat Mr. Kearns.  Because the issue is insufficiently pleaded, Mr. Kearns's allegation will be dismissed.

**6**

In Count VI, Plaintiffs seek monetary damages against the Defendants pursuant to Section 1983.  [R. 1 at 96.]  Qualified immunity bars Plaintiffs' from recovering monetary damages here.  Under Kentucky law, "[qualified] official immunity is 'immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions.'"  *Lewis v. Meyers*, 2010 WL 3829200, at *3 (W.D. Ky. Sept. 24, 2010) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001)).  Qualified official immunity is applicable to "'the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith, and (3) within the scope of the employee's authority.'"  *Id.* (quoting *Yanero*, 65 S.W.3d at 522).

At the time that Defendants enacted the emergency mandates and executive orders at issue, they were entitled to broad executive powers in light of the public health emergency.  *See Acree*, 615 S.W.3d at 812 (holding that the Governor may declare, in writing, that a state of emergency exists and that he has authority to exercise emergency powers).  Courts across the country have evaluated this issue and found that a governor who has declared a state of emergency and/or issued subsequent executive orders in response to the Covid-19 pandemic is

protected by qualified immunity.  *See generally Benner v. Wolf*, 2021 WL 4123973, at *5 (M.D.

Penn. Sept. 9, 2021) (finding Governor Thomas W. Wolf entitled to qualified immunity in his

individual capacity on a motion to dismiss in litigation pertaining to his issuance of a

Proclamation of Disaster Emergency and subsequent business and school closure orders in light

of the Covid-19 pandemic); *Case v. Ivey*, --- F. Supp. 3d ----, 2021 WL 2210589, at *25–26

(M.D. Ala. June 1, 2021) (granting qualified immunity to Governor Kay Ivey in her individual

capacity in the motion to dismiss context following litigation pertaining to her proclamation of a

national emergency and subsequent orders intended to combat Covid-19); *Northland Baptist

Church of St. Paul v. Walz*,  --- F. Supp. 3d ----, 2021 WL 1195821, at *8 (D. Minn. Mar. 30,

2021) (granting qualified immunity in the motion to dismiss context to Governor Tim Walz in

his individual capacity following the issuance of executive orders in response to Covid-19).

Having resolved this matter on qualified immunity grounds, the Court does not need to

reach the merits of this claim.  *See Martin v. City of Eastlake*, 686 F. Supp. 620 (N.D. Ohio

1988) ("The Court shall focus upon whether the police officers are entitled to qualified immunity

and need not examine the merits of the § 1983 claim."); *see also Anderson as trustee for next-of-

kin of Anderson v. City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019) ("We need not reach

the merits of this argument if the individual defendants are entitled to qualified immunity."); *Jain

v. Bd. of Educ. of Butler School Dist. 53*, 366 F. Supp. 3d 1014, 1019 (N.D. Ill. 2019) ("The

qualified-immunity ground is dispositive, so the Court need not reach the merits.").  Defendants

were clearly performing discretionary acts under the Kentucky Constitution and KRS Chapter

39A.  Accordingly, Count VI will be dismissed.

**7**

In addition to their claims for past relief, Plaintiffs further request that Defendants be "immediately enjoined and restrained from issuing or enforcing any and all orders, rules, mandates, regulations, or the like, which are predicated upon any Declaration of a State of Emergency until the question of whether a state-of-emergency exists in the Commonwealth of Kentucky has been ruled upon by this Court."  [R. 14-1 at 2.]

As previously discussed, the Kentucky Supreme Court has already addressed the issue of Governor Beshear's limited authority to promulgate executive orders, which renders this matter moot.  *See Beshear*, 2021 WL 3730708.  Governor Beshear no longer has the authority to unilaterally promulgate executive orders regarding the Covid-19 pandemic, as he must collaborate with the Kentucky legislature.  *Id.*  Therefore, the Court does not need to address this argument in greater detail here and declines to declare that no state of emergency exists.[10] Accordingly, the Court will deny Plaintiffs' Motion for a Preliminary Injunction against the Defendants.  [R. 14.]

**C**

As a final matter, on August 19, Plaintiffs filed a motion to strike certain supplemental materials Defendants provided regarding the Covid-19 pandemic and an executive order promulgated by Governor Beshear.  [R. 26; R. 28.]  Generally, "[m]otions to strike are viewed with disfavor and are not frequently granted."  *Operating Eng'rs Local 324 Heath Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

---

[10] During the first special session called following the *Beshaer* Kentucky Supreme Court decision, Kentucky lawmakers voted to extend the Covid-19 state of emergency until mid-January of 2022 when lawmakers will return to Frankfort, Kentucky, for their next regular session.  *See Kentucky lawmakers extend state of emergency in first measure passed during special session*, WLKY (Sept. 7, 2021), https://www.wlky.com/article/kentucky-lawmakers-extend-state-of-emergency-during-special-session/37503413.

Here, Plaintiffs' motion is appropriate and well taken.  However, subsequent events rendered Defendants supplemental materials irrelevant to the adjudication of this matter, and therefore the Court will deny Plaintiffs' motion as moot.

### III

Although it is clear that Plaintiffs are frustrated with the Governor's actions and want to see certain policies changed, federal courts are not always in a position to provide Plaintiffs with the relief they seek.  In this case, Plaintiffs' claims all fail because they are barred by sovereign immunity, qualified immunity, are moot, or fail to meet the requisite pleading standard required by the Federal Rules of Civil Procedure.  Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion to Dismiss [**R. 8**] is **GRANTED**;

2. Plaintiffs' Motion for a Preliminary Injunction [**R. 14**] is **DENIED**;

3. Plaintiffs' Motion to Strike **[R. 28]** is **DENIED AS MOOT**;

4. This case is **DISMISSED** and **STRICKEN** from the Court's active docket; and

5. Judgment shall be entered accordingly.

This the 4th day of November, 2021.

Gregory F. Van Tatenhove
United States District Judge